Matthew Strugar (SBN 232951)
Law Office of Matthew Strugar
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
(323) 696-2299
matthew@matthewstrugar.com

Attorney for Plaintiff Kayla Walton

# IN THE UNITED STATES DISTRICT COURT FOR

# THE CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| KAYLA WALTON,<br><br>    Plaintiff,<br><br>vs.<br><br>COUNTY OF LOS ANGELES; LOS ANGELES COUNTY SHERIFFS DEPUTY THIEME,<br><br>    Defendants. | Case No: 21-cv-9335<br><br>**Complaint for Damages and Injunctive and Declaratory Relief**<br><br><br>**[DEMAND FOR JURY TRIAL]** |

## INTRODUCTION

1. Defendant Los Angeles County Sheriffs Deputy Thieme arrested and cited Plaintiff Kayla Walton for panhandling on a public sidewalk in Calabasas. He repeatedly told her that panhandling is illegal in Calabasas. He also wrote that in his arrest report.

2. But there are two problems. First, Calabasas does not have a law prohibiting panhandling and the law Thieme cited Walton for violating does no such thing. Second, laws that purport to outlaw panhandling violate the First Amendment.

3. By arresting Walton for violating a law that doesn't exist, Thieme violated Walton's rights under the U.S. Constitution. And by having a policy of acting as though Calabasas has a prohibition on panhandling – which would be unconstitutional if it did – the Los Angeles County Sheriffs Department also violated Walton's rights under the U.S. Constitution.

## JURISDICTION AND VENUE

4. This Court has jurisdiction of this action under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).

5. Venue is proper in the United State District Court of the Central District of California under to 28 U.S.C. § 1391(b)(1) as the Central District is "a judicial district in which any defendant resides" and "all defendants are residents of the State in which the district is located." Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2), as the Central District is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."

## PARTIES

6. Plaintiff Kayla Walton is a 29-year-old Black woman who was at all relevant times a resident of Los Angeles city and county.

7. Defendant Los Angeles County Sheriffs Deputy Thieme (Employee No. 606771) is an employee of the Los Angeles County Sheriffs Department who, on information and belief, without justification, seize and cited Walton.

-1-

8. Defendant County of Los Angeles was and is a legal political entity established under the laws of the State of California, with all the powers specified and necessarily implied by the Constitution and laws of the State of California and exercised by an elected Board of Supervisors and/or their agents and officers. The County is responsible for the actions, inactions, policies, procedures, practices and customs of the Los Angeles County Sheriffs Department and its agents and employees. At all relevant times, the County was and continues to be responsible for assuring that the actions of the Sheriffs Department and its agents and employees comply with the Constitutions of the State of California and of the United States and any other applicable laws and regulations

### ADMINISTRATIVE EXHAUSTION

9. Walton exhausted her administrative remedies by filing governmental tort claims with the County of Los Angeles on April 21, 2021. By correspondence dated June 9, 2021, the County of Los Angeles rejected Walton governmental tort claims.

### FACTS

10. Kayla Walton is a 29-year-old woman and a resident of Los Angeles.

11. On November 27, 2020, Ms. Walton was standing on the sidewalk outside of the Courtyard at the Commons (23631 Calabasas Road) in Calabasas, California. She held a sign asking for monetary assistance. She was not in the parking lot of the Courtyard at the Commons; she was on the public sidewalk outside of it next to an entrance and exit for vehicles.

12. Deputy Thieme arrested her. He told her that panhandling was prohibited in Calabasas. And he cited her for a misdemeanor violation of Calabasas Municipal Code section 9.03.040. And he cited the title of Calabasas Municipal Code section 9.03.010 violation as "Panhandling."

13. In his arrest report, Thieme wrote, "While driving west on Calabasas Rd just west of Park Granada, I observed a FB/A (suspect) standing on the north sidewalk of Calabasas Rd with a cardboard sign soliciting money from motorists as they turned west onto Calabasas Rd from the shopping center parking lot (violation of 9.08.010 CMC). . . .

I asked the suspect what she was doing, and stated she had fallen on tough times and asked if she could get a warning. I asked the suspect if she was aware that panhandling is illegal in the City of Calabasas, and she said she was not aware of any such law."

14. And there is no such law. Section 9.03.010 does not prohibit panhandling. And neither does any other section of the Calabasas Municipal Code. Deputy Thieme made it up.

15. Section 9.03.010 does prohibit certain types of solicitation. The section's title is "Solicitation." And it prohibits people from "solicit[ing], or attempt to solicit, employment from a location within a commercial parking area." But Walton was neither soliciting employment nor within a commercial parking area. She was panhandling on the sidewalk. Thieme's arrest report concedes as much.

16. To date, prosecutors have not filed charges against Walton related to this arrest.

17. On information and belief, Deputy Thieme was operating under a policy of the Los Angeles County Sheriffs Department Foothill Division of acting as though panhandling is illegal in Calabasas. Prohibitions on panhandling in traditional public forums like public sidewalks are facially invalid, content-based restrictions on First Amendment rights of people who seek to panhandle or solicit donations for their own needs.

18. On information and belief, Defendants treat Black panhandlers in Calabasas more harshly than non-Black panhandlers. Similarly situated non-Black panhandlers have not been subject to arrest by the L.A. County Sheriffs Department, including on March 26, 2019; December 4, 2019; and March 24, 2020.

19. The County has failed to train its officers on constitutional responses to panhandling as revealed by the above allegations.

20. Defendant County's official policies and/or practices or customs, including but not limited to its training policies, caused the deprivation of Walton's constitutional rights by Deputy Thieme; that is, the County's official policies and/or practices or

customs are so closely related to the deprivation of Walton's rights as to be the moving force that caused her injuries.

21. Walton intends to continue to panhandle in Calabasas, but fears further seizure and arrest by Los Angeles Court Sheriffs. That fear inhibits her from panhandling in Calabasas.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

<u>42.U.S.C.1983</u>

<u>First and Fourteenth Amendments to the U.S. Constitution; California Constitution, Article I, § 2</u>

<u>(By Walton Against Both Defendants)</u>

22. Walton realleges and incorporates by reference every allegation contained in the foregoing paragraphs as though fully set forth herein.

23. All of the acts of Defendants and the persons involved were done under color of state law.

24. Defendants' conduct violated Walton's right to freedom of speech under the First Amendment to the United States Constitution and Article I, Section 2 of the California Constitution.

25. In doing these wrongful acts, Thieme acted in reckless and callous disregard for Walton's constitutional rights. The wrongful acts were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against Thieme in an amount adequate to punish his wrongdoing and deter future misconduct.

26. Deputy Thieme acted pursuant to official policies or longstanding practices or customs related to panhandling, including enforcing a nonexistent prohibition on panhandling in Calabasas.

27. The training policies of the County of Los Angeles were not adequate to train its deputies to handle the usual and recurring situation with which they must deal, including but not limited to people's First Amendment rights and people panhandling in

Calabasas. The County of Los Angeles knew that its failure to adequately train its officers to interact with people panhandling or otherwise expressing their First Amendment rights made it highly predictable that its deputies would engage in conduct that would deprive people such as Walton of their rights. The County of Los Angeles was thus deliberative indifferent to the obvious consequences of its failure to train its officers adequately.

28. As a direct and proximate result of the Defendants' acts, Walton sustained and incurred damages including but not limited to loss of liberty and emotional injury.

29. Defendants' actions entitle Walton to damages and equitable relief under 42 U.S.C. § 1983 and to equitable relief under Article I, Section 2 of the California Constitution.

## SECOND CAUSE OF ACTION
### 42.U.S.C.1983
### Fourth and Fourteenth Amendments to the U.S. Constitution; California Constitution, Article I, § 7
### (By Walton Against Both Defendants)

30. Walton realleges and incorporates by reference every allegation contained in the foregoing paragraphs as though fully set forth herein.

31. All the acts of Defendants and the persons involved were done under color of state law.

32. Defendants' conduct violated Walton's right to be free from unreasonable seizures under the Fourth Amendment to the United States Constitution and Article I, Section 7 of the California Constitution.

33. In doing these wrongful acts, Thieme acted in reckless and callous disregard for Walton's constitutional rights. The wrongful acts were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against Thieme in an amount adequate to punish his wrongdoing and deter future misconduct.

34. Deputy Thieme acted pursuant to official policies or longstanding practices or customs related to panhandling, including enforcing a nonexistent prohibition on panhandling in Calabasas.

35. The training policies of the County of Los Angeles were not adequate to train its deputies to handle the usual and recurring situation with which they must deal, including but not limited to people's First Amendment rights and people panhandling in Calabasas. The County of Los Angeles knew that its failure to adequately train its officers to interact with people panhandling or otherwise expressing their First Amendment rights made it highly predictable that its deputies would engage in conduct that would deprive people such as Walton of their rights. The County of Los Angeles was thus deliberative indifferent to the obvious consequences of its failure to train its officers adequately.

36. As a direct and proximate result of the Defendants' acts, Walton sustained and incurred damages including but not limited to loss of liberty and emotional injury.

37. Defendants' actions entitle Walton to damages and equitable relief under 42 U.S.C. § 1983 and to equitable relief under Article I, Section 7 of the California Constitution.

### THIRD CAUSE OF ACTION
<u>42.U.S.C.1983</u>
<u>Fourteenth Amendments to the U.S. Constitution; California Constitution, Article I, § 7</u>
(By Walton Against Both Defendants)

38. Walton realleges and incorporates by reference every allegation contained in the foregoing paragraphs as though fully set forth herein.

39. All the acts of Defendants and the persons involved were done under color of state law.

40. Defendants' conduct violated Walton's right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution and Article I, Section 7 of the California Constitution.

41. Defendants, in arrest Walton without legal justification, intentionally an unlawfully restrained and confined Walton and intentionally and unlawfully violated Walton's right to engage in lawful First Amendment activity.

42. Defendants treat similarly situated panhandlers who are not Black differently than they treated Walton.

43. In doing these wrongful acts, Thieme acted in reckless and callous disregard for Walton's constitutional rights. The wrongful acts were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against Thieme in an amount adequate to punish his wrongdoing and deter future misconduct.

44. Deputy Thieme acted pursuant to official policies or longstanding practices or customs related to panhandling, including enforcing a nonexistent prohibition on panhandling in Calabasas.

45. The training policies of the County of Los Angeles were not adequate to train its deputies to handle the usual and recurring situation with which they must deal, including but not limited to people's First Amendment rights and people panhandling in Calabasas. The County of Los Angeles knew that its failure to adequately train its officers to interact with people panhandling or otherwise expressing their First Amendment rights made it highly predictable that its deputies would engage in conduct that would deprive people such as Walton of their rights. The County of Los Angeles was thus deliberative indifferent to the obvious consequences of its failure to train its officers adequately.

46. As a direct and proximate result of the Defendants' acts, Walton sustained and incurred damages including but not limited to loss of liberty and emotional injury.

47. Defendants' actions entitle Walton to damages and equitable relief under 42 U.S.C. § 1983 and to equitable relief under Article I, Section 7 of the California Constitution.

**FOURTH CAUSE OF ACTION**

Violation of California Civil Code § 52.1

(By Walton Against Both Defendants)

48. Walton realleges and incorporates by reference every allegation contained in the foregoing paragraphs as though fully set forth herein.

49. Thieme, by his conduct, interfered by threats, intimidation, or coercion, or attempted to interfere by threats, intimidation, or coercion, with the exercise or enjoyment of Plaintiffs' rights as secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution or laws of the United States, and the rights secured by the Constitution or laws of the state of California, including but not limited to Article I, Sections 2 & 7.

50. There was no lawful justification for Thieme to threaten, intimidate, or coerce Walton or attempt to use treats, intimidation, or coercion to interfere with Walton's rights.

51. The County of Los Angeles is vicariously liable for Thieme's misconduct.

52. In doing these wrongful acts, Thieme acted in reckless and callous disregard for Walton's constitutional rights. The wrongful acts were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against Thieme in an amount adequate to punish his wrongdoing and deter future misconduct.

53. As a direct and proximate result of the Defendants' acts, Walton sustained and incurred damages including but not limited to loss of liberty and emotional injury.

54. Defendants' actions entitle Walton to damages and equitable relief under California Civil Code § 52.1.

### FIFTH CAUSE OF ACTION
Violation of California Civil Code § 51.7
(By Walton Against Both Defendants)

55. Walton realleges and incorporates by reference every allegation contained in the foregoing paragraphs as though fully set forth herein.

56. Thieme committed an act of violence — seizure — against Walton.

57. A substantial motivating reason for Thieme's conduct was Walton's race.

58. There was no lawful justification for Thieme to seize Walton.

59. The County of Los Angeles is vicariously liable for Thieme's misconduct.

60. As a direct and proximate result of the Defendants' acts, Walton sustained and incurred damages including but not limited to loss of liberty and emotional injury.

61. Defendants' actions entitle Walton to damages and equitable relief under California Civil Code § 51.7.

### REQUEST FOR RELIEF

Walton requests the following relief:

A. Compensatory, general, statutory, and special damages against each Defendant, jointly and severally, in amounts to be proven at trial;

B. Punitive and exemplary damages against Defendant Thieme in an amount appropriate to punish Defendant Thieme and deter others from engaging in similar misconduct;

C. A declaration that there is no prohibition on panhandling in Calabasas, including that Calabasas Municipal Code Section 9.03.010 does not prohibit panhandling, and that Defendants enforcing prohibition on panhandling violates the First Amendment;

D. Permanently enjoining Defendants, as well as their officers, agents, employees, attorneys, and all persons in active concert or participation with them, from enforcing the purported ban on panhandling in Calabasas, including using Calabasas Municipal Code Section 9.03.010 as a purported basis to prohibit panhandling.

E. Prejudgment interest;

F. Costs of suit and reasonable attorneys' fees and costs as authorized by statute or law;

G. Other such relief as the Court deems appropriate.

### DEMAND FOR JURY TRIAL

Walton demands a jury trial in this action.

Dated: December 1, 2021      By:    /s/ Matthew Strugar
                                                             Matthew Strugar

*Attorney for Plaintiff*

-10-